**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARIO VASQUEZ, | : |
| Plaintiff, | : CIVIL ACTION NO. 07-5615 (MLC) |
| v. | : **MEMORANDUM OPINION** |
| J.B. HUNT TRANSPORT INC., | : |
| Defendant. | : |

**COOPER, District Judge**

Plaintiff pro se – Mario Vasquez ("plaintiff") – commenced this action alleging a Title VII claim for national origin discrimination. (Dkt. entry no. 1.) Defendant – J.B. Hunt Transport Inc. ("J.B. Hunt") – moves for summary judgment in its favor pursuant to Federal Rule of Civil Procedure ("Rule") 56. (Dkt. entry no. 26.) Plaintiff opposes the motion. (Dkt. entry no. 28.) The Court will decide the motion without oral argument and on the papers pursuant to Rule 78(b). The Court, for the reasons stated herein, will grant the motion.

BACKGROUND

Plaintiff, who identifies himself as being Hispanic, began employment as a truck driver for J.B. Hunt on January 4, 2005. (Dkt. entry no. 28, Pl. Br., Ex. D at 7.) Upon his hiring, plaintiff was given a copy of the J.B. Hunt drivers' manual ("the manual"). (Id. at 11.) Plaintiff signed a form stating that he received the manual and understood the policies contained

therein.  (Dkt. entry no. 26, Def. Br., Ex. C, 5-30-08 Vasquez Dep. at 73-74.)  The manual contains, <u>inter alia</u>, specific sections listing "Actions Which Result in Automatic Termination or Automatic Cancellation of the [Employment] Contract" and "Actions Which May Result in Termination or Cancellation of [Employment] Contract."  (Dkt. entry no. 28, Pl. Br., Ex. G at 8-9.)  Under the latter section, the manual provides:

> There are certain other serious actions that may result in termination of your employment.  These offenses include, but are not limited to:
>
> . . .
>
> 2.  Failure to comply with J.B. Hunt policies and procedures, federal, state or local laws or regulations.
>
> 3.  Overall performances, conduct, and attitude not in the best interest of J.B. Hunt or which is deemed to damage the reputation of the company.  This includes, but is not limited to, misconduct of any kind that results in a customer's request to remove or disallow an employee from a customer site.

(<u>Id.</u> at 9.)  The manual further states that "[j]ust as an employee may resign at any time for any reason, the employee may be terminated by J.B. Hunt at any time for any reason."  (Vasquez Dep. at 51.)  Plaintiff subsequently stated that he understood he could be terminated for failing to comply with company policies.  (<u>Id.</u> at 73-74.)

Throughout his employment, plaintiff received numerous verbal and written warnings for violations of J.B. Hunt policy.  (<u>Id.</u> at 61-62, 75-95.)  For instance, plaintiff received warnings

for, <u>inter</u> <u>alia</u>, speeding through a toll, damaging equipment, arriving to work late on numerous occasions, and frequently failing to call the office at the end of the work day.  (<u>Id.</u>)  Plaintiff, moreover, in November 2006, was suspended for two days without pay for failing to report citations he received while driving a company truck.  (Pl. Br., Ex. D at 11-12; Vasquez Dep. at 67-68.)  Although the manual lists failing to report citations as a ground for termination, plaintiff was not terminated at that time because his "overall performance was pretty above average." (Pl. Br., Ex. D at 12.)  Plaintiff was, however, provided another copy of the manual after this incident.  (<u>Id.</u> at 11-12; Vasquez Dep. at 68.)

J.B. Hunt's president and chief executive officer sent plaintiff a letter on January 4, 2007 acknowledging his two years of service with J.B. Hunt and unspecified "accomplishments," and extending "a very sincere thank you for [plaintiff's] ongoing dedication and commitment."  (Dkt. entry no. 28, Pl. Br., Ex. F.)  Plaintiff also received a catalog from which to choose a company gift.  (<u>Id.</u>)

Plaintiff was contacted by telephone on March 22, 2007 by J.B. Hunt's Account Manager to discuss two incidents: plaintiff's reported use of "unprofessional language" directed at (1) his supervisor in the presence of fellow employees on March 19, 2007; and (2) his supervisor in the presence of a customer and fellow employees on March 22, 2007.  (Pl. Br., Ex. D at 8-11; <u>see</u> dkt.

3

entry no. 28, Pl. Br., Ex. A.)  During the call, plaintiff admitted using the language, but asserted he did not feel that he was out of line.  (Pl. Br., Ex. D at 9.)  Plaintiff admits, however, that he violated company policy by using the unprofessional language.  (Vasquez Dep. at 123, 141.)

Plaintiff was subsequently notified by telephone on or about March 24, 2007 that his employment with the company was terminated as a result of these incidents.  (Pl. Br., Ex. D at 10.)  A letter sent to plaintiff dated April 19, 2007 states that the termination was the result of "misconduct" for "the usage of inappropriate language in the presence of management and customers which is a violation of the companies [sic] standard of conduct policy.  Evidence indicates that [plaintiff was] notified and given warning regarding such policy and behavior."  (Dkt. entry no. 28, Pl. Br., Ex. B.)  A J.B. Hunt disciplinary form regarding the termination further states that "[b]ased on [plaintiff's] previous poor performance/ misconduct/ attitude write-ups and his continuing unprofessionalism and negative comments about J.B. Hunt in front of a customer, [plaintiff] is being terminated."  (Dkt. entry no. 28, Pl. Br., Ex. E.)  Plaintiff, who did not contest the termination, had not previously received any warnings regarding use of unprofessional language.  (Pl. Br., Ex. D at 10, 13.)

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 10, 2007,

claiming that he was subjected to discriminatory discharge based on his national origin. (Dkt. entry no. 1, 9-10-07 EEOC Charge of Discrimination ("EEOC Charge").) Plaintiff argues that he was discriminated against because he was the only Hispanic worker in a team of five, and "other employees have used inappropriate language and have harassed customers without consequence." (Id.) He further alleges that, throughout his employment, he was "disciplined in instances [his] coworkers were not. For example, other employees [were] not given warnings for being late or not calling the supervisor at the end of the workday, but [he was]." (Id.) The EEOC investigated the charge and determined that it was "unable to conclude that the information obtained establishes violations of the statutes." (11-7-07 EEOC Dismissal and Notice of Rights.)

Plaintiff filed the complaint, pro se, on November 20, 2007, alleging a Title VII claim for discriminatory discharge based on his national origin. (Dkt. entry no. 1, Compl. at 3.) Plaintiff further alleges that J.B. Hunt provided "false statements in its action as a pretext for unlawful discrimination." (Id.)

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) provides that summary judgment is proper if the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law. Id. The summary judgment movant bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has met this prima facie burden, the non-movant must set out specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e)(2). A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."

6

Id. at 247-48 (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

**II.   The Plaintiff's Title VII Claim**

Title VII prohibits employment discrimination because of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Plaintiff alleges that he was the victim of discriminatory discharge because of his national origin. (Compl. at 3.) J.B. Hunt, however, asserts that plaintiff's termination was not based on his national origin, but rather on his insubordination and use of inappropriate language to a member of management in the presence of J.B. Hunt's customer in violation of company policy. (Dkt. entry no. 28, Def. Stmt. of Facts ¶ 5.)

To succeed on a claim of national origin discrimination, a claimant must establish that he was the subject of purposeful discrimination. Weldon v. Kraft, Inc., 896 F.2d 793, 796 (3d Cir. 1990). Where the plaintiff, as in here, does not present direct evidence of discrimination, a court will apply a three-step, burden shifting analysis. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Tex. Dep't of Cmty. Affairs v.

Burdine, 450 U.S. 248, 254 (1981); see Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1065-66 (3d Cir. 1996). To assert a prima facie case of discrimination, the plaintiff must allege that: (1) he is a member of a protected group; (2) he is qualified for the position; (3) he was subject to an adverse employment action; and (4) other similarly situated individuals not in the protected group received better treatment. Burdine, 450 U.S. at 254. If the plaintiff succeeds, then the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). If the defendant makes such a showing, the plaintiff must then demonstrate by a preponderance of the evidence that the stated nondiscriminatory rationale was a mere pretext for discrimination. Id.

### A.   Plaintiff fails to show a prima facie case of employment discrimination

It is not disputed that plaintiff is able to satisfy the first and third prongs of a prima facie case of employment discrimination. The first prong requires that plaintiff belong to a protected class. 42 U.S.C. § 2000e-2. National original discrimination is defined as "including, but not limited to, the denial of equal employment opportunit[ies] because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic

characteristics of a national origin group." 29 C.F.R. § 1606.1. Plaintiff states that he is of Hispanic origin, which is sufficient to establish that plaintiff is a member of a protected class. The third prong of the prima facie test is whether plaintiff suffered an adverse employment action. The parties do not dispute that plaintiff's termination was an adverse employment action.

The second prong of a prima facie case of discrimination requires that plaintiff be qualified for the job from which he was terminated. J.B. Hunt contends that because plaintiff admits he violated company policy by using unprofessional language, and such use of unprofessional language was a documented basis for termination, plaintiff was not qualified to remain in his position. (Dkt. entry no. 26, Def. Br., at 4.) The Court, however,

> may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination.

Wexler v. White's Fine Furniture, 317 F.3d 564, 574 (6th Cir. 2003); see Barzanty v. Verizon Pa., No. 06-879, 2007 U.S. Dist. LEXIS 95273, at *37 (W.D. Pa. Nov. 5, 2007).

Plaintiff may satisfy the second prong by presenting credible evidence that he can meet the minimum objective criteria required for employment. See Sempier v. Johnson & Higgins, 45

F.3d 724, 729 (3d Cir. 1995) ("While objective job qualifications should be considered in evaluating the plaintiff's prima facie case, the question of whether an employee possesses subjective quality . . . is better left to consideration of whether the employer's nondiscriminatory reason for discharge is pretext.") (quotations omitted); Wexler, 317 F.3d at 575-76 (noting that pertinent factors include education, experience in the relevant industry, and demonstrated possession of relevant skills). Satisfactory employment performance "over a long period of time" has been deemed to meet this burden. Sempier, 45 F.3d at 729. Based on this analysis, the Court finds there is sufficient evidence in the record to demonstrate that plaintiff was qualified for the job. J.B. Hunt stated that plaintiff's "overall job performance" had been "above average" and, approximately three months before he was terminated, provided plaintiff with a gift for his two-year anniversary at J.B. Hunt. (Pl. Br., Ex. D at 12; Pl. Br., Ex F.) Although plaintiff received warnings regarding violating various policies, upon evaluation of the evidence in the light most favorable to plaintiff, plaintiff's adequate past performance history demonstrates that there are sufficient objective criteria to consider plaintiff qualified for the position.

To determine if plaintiff has satisfied the fourth prong of a prima facie test, the Court must determine whether plaintiff

10

has presented any evidence to demonstrate that non-Hispanic employees of J.B. Hunt were treated more favorably. Plaintiff alleges that there were non-Hispanic truck drivers of J.B. Hunt who were not disciplined for using inappropriate language, lateness, or failing to call the supervisor at the end of the workday. (EEOC Charge; Vasquez Dep. at 142.) Plaintiff, however, has offered no evidence to even suggest that non-Hispanic employees were caught using inappropriate language in the presence of management or customers, failed to report to work in a timely manner, failed to call the supervisor, or violated company policy in any way. (See generally Pl. Br.; dkt. entry no. 26, Def. Br., Ex. D, 7-30-08 Brown Dep, 7-30-08 Traore Dep, 7-30-08 Nowak Dep.) Furthermore, plaintiff has not provided any indication that J.B. Hunt sought any individual to fill his position, much less a person outside of the protected class. See Chambers v. Heidelberg USA, No 04-583, 2006 U.S. Dist. LEXIS 32334, at *37-*38 (D.N.J. May 5, 2006). The Court thus concludes that plaintiff has not shown that similarly situated employees were treated differently. As such, plaintiff has failed to establish a prima facie case, and summary judgment will be granted in favor of J.B. Hunt.

     **B.    Plaintiff fails to show that the legitimate, nondiscriminatory reasons proffered by J.B. Hunt to terminate his employment were a pretext for discrimination**

Even if the Court were to assume, <u>arguendo</u>, that plaintiff could establish a <u>prima facie</u> case of discrimination, the record demonstrates that J.B. Hunt had legitimate, nondiscriminatory reasons for terminating plaintiff's employment. J.B. Hunt has proffered the nondiscriminatory explanation that plaintiff's employment was terminated because he violated documented company policy by using unprofessional language in the presence of management and customers. (Def. Br., at 5-6.) J.B. Hunt asserts that plaintiff was aware that "any conduct that was not in the best interest of J.B. Hunt, or which was deemed to damage the reputation of J.B. Hunt," as well as "use of inappropriate language in the presence of J.B. Hunt management, or customers of J.B. Hunt," is a violation of company policy and could be grounds for termination of his employment. (<u>Id.</u> at 5.) The Court finds that J.B. Hunt has thus produced evidence of a nondiscriminatory reason for plaintiff's termination to rebut the presumption of discrimination that would be created by a <u>prima facie</u> case. <u>See Pollock v. Am. Tel. & Tel. Long Lines</u>, 794 F.2d 860, 863-64 (3d Cir. 1986) (finding insubordination, poor performance, and misconduct as legitimate reasons for employee discharge).

To counter this showing, "the plaintiff must prove not that the illegitimate factor was the sole reason for the decision, but

that the illegitimate factor was a determinative factor in the adverse employment decision, that is, that but for the protected characteristic," the plaintiff would not have been terminated. Fuentes, 32 F.3d at 764.  The plaintiff may prevail by showing "pretext," or simply by showing, through direct or circumstantial evidence, that the challenged action resulted from discrimination.  Watson v. Se. Pa. Transp. Auth., 207 F.3d 207, 215 n.5 (3d Cir. 2000).  To survive summary judgment, plaintiff must present sufficient evidence to either: (1) "cast substantial doubt upon" J.B. Hunt's proffered reasons for terminating him "by painting them as weak, implausible, contradictory, or incoherent;" or (ii) from which a factfinder could

> reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision (e.g., by showing that the employer in the past had subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of his protected class more favorably, or that the employer has discriminated against other members of his protected class or other protected categories of persons.)

Fuentes, 32 F.3d at 765.

The Court finds that plaintiff cannot meet this burden. Plaintiff has not produced any competent evidence to support an assertion that the stated reasons for his termination were merely a pretext.  Plaintiff offers no argument or evidence as to his basis for discrimination other than the fact that he is Hispanic.

Therefore, even viewing the facts in the light most favorable to plaintiff, there are no genuine issues of material fact existing as to the circumstances surrounding the termination of plaintiff's employment from which a reasonable jury could infer invidious discrimination.  See Hargrave v. County of Atl., 262 F.Supp.2d 393, 410 (D.N.J. 2003) (holding summary judgment should be "granted unless the party opposing the motion provides evidence such that a reasonable jury could return a verdict in favor of the nonmoving party") (citations and quotations omitted); see also Gaston v. New Jersey, No. 05-3006, 2008 U.S. Dist. LEXIS 13743, at *42-*43 (D.N.J. Feb. 21, 2008), aff'd, No. 08-1831, 2008 U.S. App. LEXIS 23576 (3d Cir. Oct. 30, 2008).

## CONCLUSION

Plaintiff can neither establish a prima facie case of discrimination nor offer sufficient evidence to rebut the legitimate nondiscriminatory reasons for his termination.  For the reasons discussed supra, the Court will grant summary judgment in favor of J.B. Hunt.  The Court will issue an appropriate order and judgment.

                                           s/ Mary L. Cooper
                                           **MARY L. COOPER**
                                           United States District Judge

Dated:    December 5, 2008